FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
6/9/2022 12:34 PM
KATHLEEN VIGIL CLERK OF THE COURT
Judyn Martinez

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

LAWRENCE LAMB,

    Plaintiff,

v.                                                                 Case No. D-101-CV-2021-01382

JOSE CORDERO, CHRIS MARQUEZ,
and the NEW MEXICO
CORRECTIONS DEPARTMENT,

    Defendants.

## FIRST AMENDED COMPLAINT FOR DEPRIVATION OF CIVIL RIGHTS AND STATE TORT CLAIMS

    Plaintiff Lawrence Lamb, through his attorneys of record, the New Mexico Prison & Jail Project (Steven Robert Allen) and Baker Law Office, LLC (Adam S. Baker), hereby brings this complaint for damages caused by the violation of his civil and constitutional rights under 42 U.S.C. § 1983 and for tort claims against the defendants pursuant to the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1 *et seq*. In support of this complaint, Plaintiff alleges as follows:

### I.  JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to NMSA 1978, § 41-4-18(A) (1976).

2. Venue is proper in this district pursuant to § 41-4-18(B).

### II.  PARTIES

3. Plaintiff Lawrence Lamb ("Plaintiff") is a 61-year-old man who was an inmate in the custody and care of Defendant New Mexico Corrections Department ("Defendant NMCD") on the



dates identified in this complaint. Plaintiff exhausted remedies available to him through Defendant NMCD's internal grievance procedure prior to filing this complaint.

4. Defendant Jose Cordero was employed as a correctional officer by Defendant NMCD on the relevant date identified in this complaint.

5. Defendant Chris Marquez was employed as a correctional officer by Defendant NMCD on the relevant date identified in this complaint.

6. At all times material to this complaint, Defendants Cordero and Marquez were public employees acting within the scope of their duties as correctional officers.

### III.  FACTS

7. On June 21, 2019, Defendants Cordero and Marquez loaded Plaintiff and seven (7) other inmates into a transport van at the Central New Mexico Correctional Facility ("CNMCF") in Los Lunas, New Mexico.

8. The transport van was scheduled to take Plaintiff and the other inmates approximately 300 miles to the Northeast New Mexico Correctional Facility ("NENMCF") in Clayton, New Mexico.

9. The transport van was not scheduled to make any stops between CNMCF and NENMCF.

10. Defendant Marquez was driving the transport van when it left CNMCF that day, and Defendant Cordero served as his escort.

11. Plaintiff and the other inmates were handcuffed and shackled aboard the transport van such that their movement inside the van was greatly restricted.

12. Plaintiff was seated in the transport van beside another inmate on a seat above the rear passenger-side tire.

13. Defendant Marquez drove the van at an excessive rate of speed, as fast as 90 miles per hour, on its way to NENMCF.

14. As the van was travelling northbound on I-25 near Rowe, New Mexico, the rear passenger-side tire blew out ripping a hole directly beneath Plaintiff in the van's plywood floor and spraying large quantities of debris into the passenger compartment.

15. Plaintiff was struck in the leg by a metal object that flew upward out of the ruptured floor.

16. Other inmates were struck by wooden particles that showered the back of the transport van, and the hole in the floor began to grow bigger.

17. The sound of the transport van's blown-out tire along with the debris flying around the passenger compartment made a noise so loud that Plaintiff initially thought somebody was shooting a firearm at the van.

18. The inmates yelled to Defendants Cordero and Marquez to stop the van and banged on the metal cage that separated the inmates from the correctional officers.

19. Defendants Cordero and Marquez ignored the inmates' pleas, and Defendant Marquez kept driving.

20. The pavement of the road below became visible to some of the inmates through the floor and the van lurched due to the blown-out tire.

21. Defendant Marquez was finally forced to pull the van over to the side of the road as a result of the blowout.

22. Once the van came to rest, Plaintiff and a couple other inmates alerted Defendants Cordero and Marquez that they had been injured by the debris coming up from the floor of the transport van.

23. Defendants Cordero and Marquez responded sarcastically to the inmates and otherwise ignored their complaints.

24. Defendant Marquez or Defendant Cordero turned off the van, which quickly became hot inside. Only after the inmates complained about the heat did Defendant Marquez or Defendant Cordero re-start the van and turn on the air conditioning.

25. Approximately 40 minutes later, New Mexico State Police officers arrived at the scene.

26. More than one (1) hour after the transport van pulled over to the side of the highway, a team of correctional officers from the Penitentiary of New Mexico in Santa Fe, New Mexico, ("PNM"), arrived to provide additional security.

27. More than two (2) hours after the transport van pulled over to the side of the highway, CNMCF Garage Specialist Philip Romero arrived in NMCD van #4750 with a spare tire for the transport van.

28. Defendant Marquez and Defendant Cordero left all the inmates aboard the original transport van for more than two (2) hours as they waited on the side of the highway, which was warm inside even with the air conditioning running.

29. Mr. Romero asked Defendant Marquez if he was speeding and suggested that speeding may have caused the tire to blowout.

30. Defendants Cordero and Marquez decided to transport the inmates back to CNMCF using van #4750 even though Mr. Romero told them that the air conditioning on van #4750 did not work.

31. The interior of the back of van #4750 consisted of a metal box/insert lined with narrow metal benches for the inmates to sit on.

32. Initially, there were no open windows or other means of ventilation in the back of van #4750.

33. Once they were loaded into van #4750, Plaintiff and the other inmates quickly became overheated and began to protest as they sat on the side of the highway.

34. During this entire time on the side of the highway, neither Plaintiff nor any of the other inmates were provided with anything to drink.

35. After leaving for the return to CNMCF in van #4750, the inmates immediately became even more unbearably hot and they began to beg Defendants Cordero and Marquez for help.

36. Plaintiff could see that the air conditioning ducts that attach to the vents in the inmate section of the van were not even attached.

37. Defendants Cordero and Marquez refused to stop, and otherwise ignored the inmates' pleas for help.

38. Minutes into the ride, the interior walls of the metal box/insert began to drip with condensation from the inmates' sweat.

39. Plaintiff felt hotter than he had ever been in his life, and he quickly became so dehydrated that he stopped sweating.

40. Several of the inmates looked like they were about to collapse and some, including Plaintiff, began to have trouble breathing.

41. Plaintiff became terrified that he might die.

42. As the inmates' pleas for help grew more desperate, Defendants Cordero and Marquez continued to ignore them.

43. After traveling for about 45 minutes in van #4750, they made a stop at PNM.

44. When they got to PNM, the inmates were weak, drenched in sweat and dehydrated.

45. Plaintiff and the other inmates were seen by medical personnel at PNM and then placed in holding cells.

46. After a short time in the holding cells, the inmates were loaded back into van #4750 to complete the return trip to CNMCF.

47. Plaintiff and the other inmates were terrified to be placed back into van #4750 given the unbearable and dangerous conditions to which they had been subjected on the ride back to PNM.

48. To ensure the inmates got back into the same van, Defendants Cordero and Marquez assured the inmates they had repaired the air conditioning in the van.

49. In fact, the air conditioning had been improperly repaired by using tape in an attempt to reattach the air conditioning ducts to the vents in the inmate section of the van.

50. Defendants Cordero and Marquez stopped the van once more before leaving the grounds of PNM in order to try reattaching the ducts again, but the air conditioning only blew hot air on the inmates.

51. Despite their knowledge that the air conditioning on van #4750 was not working at all and that the inmates may suffer serious injury or death by riding in the hot van all the way back to CNMCF, Defendants Cordero and Marquez ignored this threat to the inmates' health and safety and departed for CNMCF in transport van 4750.

52. Plaintiff and the other inmates continued to plea for help.

53. They banged loudly on the walls of the van to let Defendants Cordero and Marquez know the conditions were intolerable and dangerous.

54. Defendants Cordero and Marquez again ignored all of the inmates' pleas.

55. Again, the interior walls of the metal box/insert began to drip with condensation from the inmates' sweat and the inmates' paper jumpsuits became almost transparent and stuck to their bodies from their sweat.

56. For a second time that day, Plaintiff thought he might die from the extreme heat and several inmates looked like they were about to collapse.

57. One of the inmates threw up in the van, and another became apparently unconscious and fell to the floor of the van.

58. The inmates were also jostled and thrown about the back of the van due to Defendant Marquez's erratic and excessively fast driving.

59. Defendants Cordero and Marquez continued the trip to CNMCF without stopping to check on Plaintiff and the other inmates.

60. When they finally arrived at CNMCF, Plaintiff received a medical assessment during which it was determined that he was severely dehydrated and required further medical treatment.

61. Plaintiff was placed in a medical holding cell at CNMCF that had no sink, where for three (3) days he had no access to drinking water other than what he was provided with regular meals.

62. During this time, he continued to suffer from headaches and other physical symptoms from the ordeal.

63. Plaintiff was then placed into a segregation cell until he was transported to Lea County Correctional Facility in Hobbs, New Mexico, on or about June 28, 2019.

## COUNT I: VIOLATION OF EIGHTH AMENDMENT RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT AGAINST DEFENDANTS MARQUEZ AND CORDERO

64. Plaintiff restates each of the preceding allegations as it fully stated herein.

65. Defendant Marquez knew that speeding down a major interstate in a transport van created a substantial risk of serious harm to Plaintiff and the seven other inmates in the van.

66. Despite this risk, Defendant Marquez intentionally drove at an excessive and unsafe rate of speed, which caused Plaintiff and the other inmates in the van to bounce and be thrown around in their seats.

67. As a result of Defendant Marquez's actions, the rear passenger-side tire blew out and then tore through the van's floor as Defendant Marquez continued to drive on the highway. Plaintiff and several other inmates were struck by debris flying up from the hole in the floor of the van.

68. Plaintiff and the other inmates desperately tried to alert Defendants Marquez and Cordero that they needed to stop the van, but Defendants Marquez and Cordero ignored them.

69. The manner in which Defendants Marquez and Cordero operated the transport van was deliberately indifferent to the safety and well-being of Plaintiff and the other inmates aboard the van.

70. After the van finally did stop, Defendants Marquez and Cordero left Plaintiff and the other inmates in stifling heat inside the van for over two (2) hours without adequate ventilation or air-conditioning.

71. Defendants Marquez and Cordero then moved Plaintiff and the other inmates to a second transport van, which had a non-functioning air-conditioning system.

72. Defendants Marquez and Cordero knew the second transport van had a non-functioning air-conditioning system when they placed Plaintiff and the other inmates in it.

73. It is common knowledge that it is dangerous to leave any person or animal in a vehicle during New Mexico summers for any amount of time without air-conditioning or fresh air.

74. Defendants Marquez and Cordero acted with deliberate indifference to a substantial risk of serious harm to Plaintiff and the other inmates by confining them inside the first and second transport vans on the side of the highway under the summer sun without adequate ventilation or air-conditioning.

75. After leaving the side of the highway, Plaintiff and the other inmates continued growing hotter by the minute, but Defendants Marquez and Cordero ignored their condition in the back of the van and did not provide them with water or fresh air.

76. Defendants Marquez and Cordero could hear the inmates yell and beg for help but they consciously ignored them.

77. After Plaintiff and his fellow inmates arrived at PNM and were evaluated by medical staff, the inmates refused to get back into the van without air-conditioning.

78. Defendants Marquez and Cordero deliberately deceived Plaintiff and the other inmates to convince them to get back inside the hot van.

79. Defendants Marquez and Cordero refused to pull over in response to the inmates' pleas and requests for water and fresh air throughout the ride.

80. Defendants Marquez and Cordero drowned out Plaintiff and the other inmates' pleas by turning up their music in the van to intentionally ignore them for at least the third time that day.

81. In 2013, Isaha Casias and several other inmates were trapped for hours in a van almost identical to the one Plaintiff and his fellow inmates found themselves in on this hot New Mexico summer day.

82. Like Plaintiff, Mr. Casias and multiple inmates were left in a transport van in mid-summer.

83. Mr. Casias and other inmates suffered serious injuries as a result of this incident.

84. On April 4, 2019, less than three (3) months before Plaintiff's transport by Defendants Marquez and Cordero, a jury reached a verdict in favor of Mr. Casias in which it found the transport officers in that case had violated Mr. Casias' constitutional rights.

85. The jury awarded Mr. Casias $1,000,000 in compensatory damages and $1,000,000 in punitive damages against the defendants in the case.

86. This case was widely reported in local and national television news outlets, including the *Albuquerque Journal*, the *Santa Fe New Mexican*, the *Washington Times*, and KOAT Action 7 News.

87. Despite this recent and widely-publicized incident involving a DOC prisoner transport, Defendants Marquez and Cordero confined Plaintiff and the other inmates inside the back of a van with no air-conditioning on a hot summer day.

88. Defendants Marquez and Cordero acted with deliberate indifference to a substantial risk of serious harm to Plaintiff and the other inmates on board the transport vans they operated that day.

89. Defendants Marquez and Cordero, acting under color of state law, thus violated Plaintiff's rights under the Eighth Amendment to the United States Constitution.

90. The actions and omissions of Defendant Cordero and Marquez were intentional, malicious, sadistic, willful, wanton, obdurate and in gross and reckless disregard of Plaintiff's constitutional rights.

91. As a direct and proximate result of Defendants' actions and omissions, Plaintiff suffered physical and psychological injuries, pain and emotional distress for which he is entitled to an award of damages.

WHEREFORE, Plaintiff requests compensatory and punitive damages against Defendant Chris Marquez and Defendant Jose Cordero, together with an award of attorney's fees and costs as allowed by law.

### COUNT II: NEGLIGENT OPERATION OR MAINTENANCE OF A MOTOR VEHICLE AGAINST ALL DEFENDANTS

92. Plaintiff restates each of the allegations set forth in paragraphs 1 through 62, above, as though fully stated herein.

93. Defendants owed Plaintiff a duty to protect his health and safety in their operation and maintenance of the motor vehicles used to transport inmates such as Plaintiff.

94. Defendants breached this duty as set forth above, *inter alia*, by driving at an excessive rate of speed, failing to properly maintain the transport vans in which Plaintiff was transported, and failing to take reasonable steps in the operation of the transport vans to protect Plaintiff's health and safety on the date at issue.

95. As a direct and proximate result of Defendants' negligent conduct alleged herein, Plaintiff suffered physical and psychological injuries, pain and emotional distress for which he is entitled to an award of damages.

96. The negligent conduct alleged herein constitutes negligent operation or maintenance of a motor vehicle for which governmental immunity is waived pursuant to NMSA 1978, § 41-4-5 (1976).

97. Defendant NMCD is vicariously liable under the doctrine of *respondeat superior* for any and all such negligence of its employees, including but not limited to Defendants Cordero and Marquez, committed within the course and scope of their duties as public employees.

WHEREFORE, Plaintiff requests compensatory and punitive damages against all Defendants, together with an award of attorney's fees and costs as allowed by law.

## JURY DEMAND

98. Plaintiff hereby demands a trial by jury on all counts so triable.

Respectfully submitted,

ATTORNEYS FOR PLAINTIFF:


*/s/ Steven Robert Allen*
STEVEN ROBERT ALLEN
NEW MEXICO PRISON & JAIL PROJECT
3800 Osuna Road NE, Ste 2
Albuquerque, NM 87109
(505) 515-0939

*/s/ Adam S. Baker*
ADAM S. BAKER
BAKER LAW OFFICE, LLC
P.O. Box 784
Santa Fe, NM 87504
(505) 690-7466