IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LAWRENCE LAMB,

    Plaintiff,

    v.                                                         No. 1:22-CV-00485 WJ/LF

JOSE CORDERO, CHRIS MARQUEZ
and the NEW MEXICO CORRECTIONS DEPARTMENT,

    Defendants.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SPOLIATION
SANCTIONS AGAINST DEFENDANTS**

COME NOW Defendants New Mexico Corrections Department ("NMCD"), Chris Marquez and Jose Cordero, by and through counsel of record, Kennedy, Moulton & Wells, P.C., by Debra J. Moulton and respectfully request that the Court enter an order denying Plaintiff's Motion for Spoliation Sanctions Against Defendants [Doc. 48]. As grounds therefore, Defendants state:

## INTRODUCTION

Plaintiff seeks spoliation sanctions against Defendants because Defendant could not produce three videos. Defendants assert that this is not a willful act of spoliation or attempt to hide evidence, but rather, at most, acts of negligence based on the standard procedure of overwriting video, failure to timely capture video and a lack of awareness of the possible evidentiary value of the data. The loss of the videos does not meet the criteria for spoliation nor does its loss prejudice the Plaintiff.

## BACKGROUND

On June 21, 2019, at approximately 6 a.m., Transport Van #5389 departed Central New Mexico Correctional Facility in route to Northeast New Mexico Detention Facility in Clayton,

New Mexico with eight inmates on board.  *See*, Transport Log, attached to Plaintiff's Motion for Spoliation Sanctions Against Defendants as Exhibit 6.  Defendant Cordero was driving the van and Defendant Marquez was the escort.  *See*, Exhibit 6.  During the inspection of the van conducted prior to departure, the camera was working.  *See*, Deposition of Jose Cordero, pp. 52, l 16 – 20, attached hereto as Exhibit A.  On the Transport Log, it is noted at 7 a.m. "Camera Not Working."  Defendant Marquez testified, when asked in his deposition if the van's camera was working: "Probably for the inspection but we had been having issues with those cameras, because once you start driving they go out within, like 30 minutes to an hour in the drive."  *See*, Deposition of Chris Marquez, pp. 63, l 16 – 22, attached hereto as Exhibit B.  He further testified that in Van #5389, on June 21, 2019, the camera went out and he documented it on the log.  *See*, Exhibit B, pp. 63, l 23 – 25.  While one hour of the transport, specifically between 6 – 7 a.m. may have been recorded on the camera's hard drive, no portion of Plaintiff's Complaint addresses events that occurred in the first hour of the transport.  *See* Complaint, Doc. 4.

At the end of the day of transport, Transport Officers are instructed to remove the camera's hard drive from the van and leave it on the supervisor's desk.  It is then downloaded onto the computer.  *See*, Exhibit B, pp. 31, l 4 – 14.  When Van #5389 was returned to Central New Mexico Correctional Facility (CNMCF) on June 21, 2019, the hard drive was not removed by Defendant Marquez and he has no idea what happened to the video because he did not return the van to the facility.  *See*, Exhibit B, pp. 116, l 14 – 21.  Nor was the hard drive removed and taken to the Transport Office by Defendant Cordero, because he did not drive Van #5389 back to CNMCF.  *See*, Exhibit A, pp. 104, l 24 – pp. 105, l 11.  Philip Romero, a Garage Specialist at CNMCF returned Van #5389 to CNMCF on June 21, 2019 and does not know if the camera hard drive was removed from the van that day after the van was returned to the garage.  *See*,

Deposition of Philip Romero, pp. 27, l 22 – 25, attached hereto as Exhibit C. Thus, there is neither evidence that the video from the first hour of the transport was ever downloaded nor that it ever existed.

At approximately 7:40 a.m. on June 21, 2019, Van #5389 had a flat tire in Rowe, New Mexico. At 10 a.m. Philip Romero arrived where the van was disabled and replaced Van #5389 with Van #4750. Transport Officers Marquez and Cordero then went to the Penitentiary of New Mexico, South facility (PNM South) to have the inmates evaluated by medical staff. The inmates were escorted into the facility, evaluated by medical, photographed, given food and water and then returned to the van. Plaintiff alleges that video from the PNM South sallyport should have been saved and produced, despite the fact that nothing was alleged to have occurred in the sallyport other than the inmates going into and coming out of the facility.

When Transport van #4750 arrived back at CNMCF, medical personnel met the van and evaluated all of the inmates. Plaintiff alleges that video from CNMCF sallyport should have been saved and preserved. Based on the testimony of Lieutenant George Garcia, who prepared the Serious Incident Report, the video was not reviewed by him in the writing of his report:

> Q: Did you check to see if there was any video?
>
> A: No, I didn't.
>
> Q: Okay. Did you check any security footage from, like, sallyports or entrances to the prison?
>
> A: No. When the transport arrived to the facility we were present there at the sallyport so I didn't. There was no incident that occurred in the sallyport so there was no need to submit video from the sallyport.

*See*, Deposition of George Garcia, pp. 19, l 21 – pp. 20, l 24, attached hereto as Exhibit D. While part of the "incident" involved an inmate being injured and transported by ambulance to the hospital, Lt. Garcia did not feel it was necessary to collect any footage of that incident. *See*,

Exhibit D, pp. 21, l 18 – 24.  Also, Lt. Garcia was not aware that there were cameras on the transport vans.  *See*, Exhibit D, pp. 22, l 13 – 16.

As a result, no video was captured at the time Lt. Garcia prepared the Serious Incident Report, either from the transport van or from Sallyport at PNM South or CNMCF.  The Serious Incident Report was completed and submitted on the date of the incident, June 21, 2019.  *See*, Exhibit D, pp. 28, l 7 – 8.  No further investigation was done.

## LEGAL STANDARDS FOR SPOLIATION

Plaintiff seeks a jury instruction allowing or requiring the jury infer the contents of the "destroyed video evidence would have been unfavorable to the Defendants," based on an alleged video from Transport Van #5389 for the first hour of the trip and because the videos from the Sallyports at PNM South and CNMCF cannot be located.

Spoliation involved the "intentional destruction, mutilation, alteration, or concealment of evidence."  *Spoliation, Black's Law Dictionary* (8th ed. 2004).  "Spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence."  *Marquez v. Albuquerque Pub. Schs.*, Civ No. 18-133 MV/SCY, 2019 WL 5595180, (D.N.M. Oct. 30, 2019, *citing Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009).

"But if the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith."  *Id.*, *see also Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015) ("The entry of default judgment or the imposition of adverse inferences require a showing of bad faith.").  Bad faith requires "some showing of willful destruction of evidence."  *Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1300 n.6 (D.N.M. 2016).  Accordingly, "[m]ere

4

negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." *Aramburu v. Boeing Co*., 112 F.3d 1398, 1407 (10th Cir. 1997).

The Court examines five factors before choosing a sanction to impose: "(1) the degree of the actual prejudice to the Plaintiffs; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions." *Garcia v. Berkshire Life Ins. Co. of Am*., 569 F.3d 1174, 1179 (10th Cir. 2009)(citing *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 – 21 (10th Cir. 1992)).

A demonstration of bad-faith destruction of relevant evidence generally gives rise to an inference that production of the [evidence] would have been unfavorable to the party responsible for its destruction." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) (internal citations omitted). Such an adverse inference "is a powerful sanction as it brands one party as a bad actor and necessarily opens the door to a certain degree of speculation by the jury." *Henning v. Union Pac. R. Co.*, 530 F.3d 1206, 1219-20 (10th Cir. 2008). In the absence of a showing of bad faith, such as in the case of mere negligence, an adverse inference is unsupportable. *Aramburu,* 112 F.3d at 1407; *Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015).

## ARGUMENT

**A. It has not been established that the video from the Transport Van exists.**

Plaintiff alleges that because the camera in the Tranport van recorded for an hour, it must exist, despite lack of evidence that anyone brought the hard drive into the Transport office to be downloaded. As noted in deposition testimony, neither Defendant Marquez nor Defendant Cordero brought the hard drive in to be downloaded because they did not return Van #5389 to CNMCF on June 21, 2019. Philip Romero, (a mechanic) returned the van to CNMCF on that day

but did not remove the hard drive because he did not know he was supposed to do so. Stephen DeBerry, NMCD IT reviewed the Coban server from CNMCF and learned that there was no video stored from Van #5389 on that day. *See*, Affidavit of Stephen DeBerry, attached hereto as Exhibit E. If the video download from June 21, 2019 for Van #5389 had been erased, there would be indication of that on the system and there was no such indication. *See*, Exhibit E.

Plaintiff states that "Defendants also make the dubious claim that cameras on Van #5389 stopped working shortly before the tire blew out…" First, there was only one camera on Van #5389. Second, a video camera is an electronic device and electronic devices break down.. The fact that the camera stopped working during the transport before the tire blew does not render those facts as "dubious," particularly in light of the fact that Defendant Marquez testified they he had problems with those cameras previously. *See*, Exhibit B.

No one has testified that they actually saw the video or knew with certainty that it existed. The Court should decline to award sanctions because Plaintiff has failed to establish that the video from Van #5389 actually existed.

**B. Negligence is not spoliation.**

"A party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys evidence according to is policy or in the normal course of business." *United States v. $40,955.00 in United States Currency*, 554 F.3d 752, 758 (9th Cir. 2009). In this matter, the videos from the sallyport at PNM South and CNMCF were not destroyed, but never captured before they were recorded over. In part, that was because Lt. George Garcia did not believe that the videos of the sallyports were relevant to the Serious Incident Report ("SIR") as "[t]here was no incident that occurred in the sallyport so there was no need to submit video from the sallyport." *See*, Exhibit D, pp. 20, l 22 – 24. Plaintiff filed a Tort Claim Notice, through counsel, on September 6, 2019, 77 days after the incident. This was the first indication to

Defendants that litigation was "imminent." By September 6, 2019, the video from the sallyport at CNMCF would have been recorded over, as the preservation period during that time frame was 53 days. *See*, Exhibit E. Likewise, the video from the sallyport at PNM South would have been recorded over, as the preservation period during that time frame was 50 days. Defendants could not have known prior to September 6, 2019, that litigation was imminent—thus, spoliation sanctions are not appropriate. Failure to preserve the video on the date of the incident does not constitute spoliation. At most, it was mere negligence, which does not rise to the level of spoliation meriting sanctions. *Aramburu*, at 1407.

### C. Plaintiff has not shown prejudice sufficient to warrant the requested sanctions.

The second query in determining if spoliation sanctions are appropriate is whether the adverse party was prejudiced by the destruction or, in this case, the failure to capture the videos. The Tenth Circuit requires a finding of actual, rather than theoretical prejudice. *Turner*, 563 F.3d at 1150; see also *Derrick v. Standard Nutrition Co.*, No. Civ 17-1254 RB/SMV, 2019 WL 2024960, at *13 (D.N.M. May 8, 2019) (denying sanctions when the moving party did not establish "a reasonable probability, based on concrete evidence rather than a fertile imagination" that the evidence at issue would be favorable to their case). Plaintiff argues that he has been prejudiced by the unavailability of the videos, but offers no evidence to support that assertion, other than speculating that the videos must have been favorable to him or NMCD would not have made them unavailable to him. Such speculation does not show actual prejudice.

The crux of this prong is that without the evidence at issue, a party cannot prosecute the lawsuit. Courts will not intervene, however, unless the prejudice is "extraordinary." *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 593 (4th Cir. 2002). Here, Plaintiff has not established that the prejudice is "extraordinary." Indeed, Plaintiff has presented no evidence that

without the videos, he cannot fully prosecute this case.

The Tenth Circuit has affirmed a finding of no prejudice from the loss of information where the adverse party "had access to a significant amount of evidence regarding" the same subject. *Turner*, 563 F.3d at 1150; see also *McCauley v. Bd. Of Comm'rs for Bernalillo Cnty.*, 603 F. App'x 730, 736 (10th Cir. 2015) (no prejudice where the missing recordings "were not [plaintiff's] only source of information about" the subject). In this case, Plaintiff was able to depose the Transport Officers, the other inmates in the van, Lt. George Garcia who conducted the investigation, Deputy Warden Mike DeLaTorre who supervised the Transport division at CNMCF in June of 2019, and other individuals involved in the transport that day.

### D. Plaintiff has not made a showing of bad faith.

Plaintiff is also not entitled to the requested sanctions of an adverse inference jury instruction, because he has not made a showing of bad faith. As noted, bad faith requires some showing of willful destruction of evidence. *See Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1300 n.6 (D.N.M. 2016). Plaintiff argues that NMCD had a duty to preserve the videos and its failure to comply with the duty constitutes bad faith. In other words, Plaintiff implies that because the videos are not available, NMCD must have destroyed them deliberately and willfully. This reasoning equates duty to preserve with bad faith. However, recording over earlier video from CNMCF and PNM South was done in the routine course of business and it was done without human intervention. Overwriting the videos is an automatic process; bad faith cannot be implied. Failure to capture the video from the transport van under the circumstances described herein does not rise to the level of willful destruction but is closer to mere negligence. There simply is not evidence of bad faith. Accordingly, the Court cannot impose the harsh sanction of an adverse jury instruction, as requested by the Plaintiff.

### E. No sanctions are appropriate.

In determining an appropriate sanction, if any, the Tenth Circuit first considers the degree of actual prejudice. *Ehrenhaus v.Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992). As asserted, the unavailability of the three videos is not prejudicial to Plaintiff's case; he is fully able to prosecute the case without the videos. The second consideration is the amount of interference with the judicial process, which usually refers to the court "expend[ing] an enormous amount of time examining documents, testimony and arguments made [by a litigant] … many of which have proved to be false and unreliable." *Philips Electronics North American Corporation et al. v. BC Technical*, 773 F. Supp.2d 1149, 1211 (D.Utah, Central Division 2011). This motion turns on unavailable video recordings and not falsified statement, cover-ups and other forms of mendacity that would waste the Court's time. Thirdly, Defendants' culpability is minimal in that the two missing videos from CNMCF and PNM South were overwritten in the normal course of business and no human intervention created the loss of the videos. Likewise, Defendants' culpability with regard to video from the transport van is also minimal in that the video was not downloaded on the date of the incident and is not now available; the video was not destroyed or deleted from the Coban server. The fourth consideration is whether the Court warned the party in advance about default judgment. The Court has not warned Defendants in advance of possible sanctions in this case; the cases cited by Plaintiff in which the court warned NMCD of default are not appropriate for consideration here. The efficacy of lesser sanctions is also not relevant, as there have been no lesser sanctions.

Inasmuch as the Defendants did not destroy the videos by an act of bad faith or waste the Court's time and the actual prejudice to the Plaintiff's case is minimal, then the Court should deny Plaintiff's Motion for Sanctions.

## CONCLUSION

The first indication that NMCD had that litigation was imminent involving the transport on June 21, 2019 was the Tort Claims Notice received from counsel dated September 6, 2019. When that notice was received by NMCD, the videos from CNMCF and PNM sallyports had been overwritten and video from June 21, 2019 no longer existed. This was not an intentional destruction of evidence, but a process that occurs in the normal course of business, based primarily on resources. Similarly, the alleged first hour video from Transport Van #5389 is not stored on the server and has not been deleted. Nor is it on the hard drive for Van #5389. This was also not intentional destruction inasmuch as it has not been established that such a video ever existed. As such, Defendants request the denial of Plaintiff's Motion for Spoliation Sanctions Against Defendants.

Respectfully submitted,

KENNEDY, MOULTON & WELLS, P.C.
*/s/ Debra J. Moulton*
DEBRA J. MOULTON
Attorneys for Defendants
2201 San Pedro NE, Bldg. 3, Suite 200
Albuquerque, New Mexico 87110
(505) 884-7887

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent electronically and via CM/ECF to:

Steven Robert Allen
New Mexico Prison & Jail Project
3800 Osuna Rd. NE Suite 2
Albuquerque, NM 87109
steve@nmpjp.org

Adam S. Baker
Baker Law Office
P.O. Box 784
Santa Fe, NM 85704
abaker@bakerlawoffice.net
*Attorneys for Plaintiff*

on this 1st day of May 2023

*/s/ Debra J. Moulton*
DEBRA J. MOULTON